UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

James Pintar and Tricia Pintar,

    Plaintiffs

  v.

CSAA General Insurance Company, et al.,

    Defendants

Case No. 2:21-cv-00652-CDS-EJY

**Order Granting in Part and Denying in Part Defendant's Motion for Partial Summary Judgment**

[ECF No. 32]

    This is a bad-faith insurance action brought by plaintiffs James and Tricia Pintar (collectively, the Pintars). Plaintiffs bring three claims for relief: (1) breach of the covenant of good faith and fair dealing, (2) breach of contract, and (3) a violation of Nevada's Unfair Claims Practice Act (UCPA). Defendant CSAA General Insurance Company[1] brings this motion for partial summary judgment on the UCPA and good faith and fair dealing claims, and for relief from plaintiffs' prayer for punitive damages.[2] The Pintars oppose the motion and seek voluntary dismissal of their UCPA claim.[3] The matter is now fully briefed.

    For the reasons set forth herein, I grant in part and deny in part CSAA's motion for partial summary judgment. I also instruct the parties to participate in a mandatory settlement conference before Magistrate Judge Elayna J. Youchah. Should the case not settle, **a joint pretrial order will be due 14 days after the settlement conference.**

---

[1] The complaint identifies the defendant as AAA Nevada Fire & Casualty Insurance Company. *See* ECF No. 1 at 1. In their motion for partial summary judgment, defendant states that it is identified incorrectly in the caption. ECF No. 32 at 1, n. 1. Defendant advises that it is properly named "CSAA General Insurance Company." *Id*. The Clerk of Court is kindly directed to correct the caption to reflect the defendant as CSAA General Insurance Company.

[2] CSAA is not seeking summary judgment on the Pintars' breach of contract claim. ECF No. 32 at 3.

[3] Pls.' Opp'n to Mot. Part. Summ. J., ECF No. 35 at 9.

I.  Background information and relevant facts[4]

On August 11, 2018, a windstorm caused significant damage when two trees fell over and struck the Pintars' home in Las Vegas, Nevada (windstorm). ECF No. 1 at 2, ¶9. There is no dispute that at the time of the windstorm, the Pintars had a homeowner's insurance policy in effect through CSAA.[5] The policy provided coverage for "[the Pintars'] dwelling, other structures, personal property, loss of use, personal liability coverage and medical payments, all as stated in the policy for varying designated policy amounts." ECF No. 1 at 2, ¶8; ECF No. 32 at 4, ¶2 (undisputed fact).

The Pintars contacted CSAA on August 12, 2018, and initiated a claim[6] for the repairs caused to their home by the trees. ECF No. 1 at 2–3, ¶10; ECF No. 32 at 4, ¶4 (undisputed fact). There is no dispute that CSAA accepted coverage for the damage caused to the Pintars' home. *Id.* According to CSAA, the Pintars were informed they would have to remove the fallen trees to allow an investigator to perform an inspection of their home. ECF No. 32 at 4, ¶6 (citing Claim Notes from CSAA, Def.'s Ex. A, ECF No. 32-1 at 7). The Pintars' policy may not include coverage for tree removal. *See* Claim Notes from CSAA, Def.'s Ex. A, ECF No. 32-1 at 7. CSAA also offered the Pintars temporary housing if their home was deemed uninhabitable because of the damage. *Id.* at 8.

On August 21, 2018, the Pintars advised CSAA that the fallen trees were removed from the property. *Id.* at 10. Six days later, CSAA's investigator completed an inspection that included documentation of the losses and taking photographs of the damage to the Pintars' home. *Id.* at 12.

---

[4] The court cites to the complaint to provide background information. Citations to the complaint are not findings of fact unless the fact is noted as undisputed, or otherwise supported by admissible evidence.

[5] Policy No. H05-003969748. Neither party provided a copy of the policy to the court for my consideration, but the pleadings agree that there was a CSAA Nevada policy covering the Pintars' residence in effect at the time their home was damaged by the trees. *See* Compl., ECF No. 1 at 2, ¶7; Def.'s Mot. Part. Summ. J., ECF No. 32 at 3–4, ¶1 (undisputed fact).

[6] Claim No. 1002-82-8541.

Upon conclusion of the inspection, CSAA recommended that an engineer conduct an additional inspection of the property. *Id.* On August 28, 2018, the following day, the Pintars advised CSAA that they would hire a structural engineer to inspect their home. *Id.* at 13–14.

Subsequently, on September 7, 2018, CSAA asked the Pintars to provide a copy of the engineer's report in order to assess the property damage on their home. *Id.* at 13. Three days later, CSAA contacted the structural engineer to obtain a copy of his report and learned that the engineer was licensed in Colorado, not Nevada. *Id.* at 14–15. The engineer informed CSAA that his report required verification by a Nevada-licensed engineer; and thereafter, the certified report would be returned the same day. *Id.* CSAA still had not received the engineer's report by October 2, 2018. *Id.* at 17–18. On October 12, 2018, the Pintars hired a Nevada licensed engineer who sent a report to CSAA. *Id.* at 19–21. On October 17, 2018, CSAA determined that the report was "unusable" and decided to hire its own engineer. *Id.* at 22. A copy of that report has not been provided to the court.

On November 7, 2018, the Nevada licensed engineer hired by CSAA conducted his inspection. *Id.* at 24. That report was forwarded to the Pintars on January 3, 2019. *Id.* at 25–26; *see generally* Ex. B (Engineering report). The CSAA-hired engineer called the Pintars and apologized for the delay, advising that the report's tardiness was his fault and not the fault of CSAA. *Id.* at 26. Approximately one week later, CSAA sent its cost estimate for repair of the damages to the Pintars' home. *Id.* at 27. The CSAA-hired engineer concluded that the residence was structurally sound and stable; however, due to the fallen trees, structural damage had occurred that included "deformation, displacement, and/or cracking of structural framing member near the point of impact[,]" and other "non-structural" damage. *Id.* at 84. To restore the Pintars' home to its pre-damaged condition, the CSAA-hired engineer recommended that "impact load elements" be repaired, and the "roof framing of the main residence and garage be exposed at the locations of impact to verify the extent of the structural damage." *Id.* at 85.

On that same day (January 3, 2019), the Pintars responded to the estimate, disputing portions of the engineer's report. *Id.* at 28. On January 30, 2019, CSAA affirmed the estimate (*id.* at 36–37), which the Pintars continued to dispute. *Id.* at 39. Because of the disagreement, the Pintars advised that they would obtain their own contractors. *Id.* at 40–41. Part of the disagreement involved the roof; the CSAA-hired engineer determined that it could be repaired, not replaced, whereas the engineer hired by the Pintars determined it should be replaced. *Id.* at 41–43, 45–48.

On February 5, 2019, the Pintars sent a contractor estimate for the repairs to CSAA. *Id.* at 45–46. That estimate totaled $82,332.19 and included costs for replacing windows, installing a new roof, and labor. *Id.* at 43–46. On February 11, 2019, CSAA offered to have its investigator work with the Pintars' contractor to conduct a joint inspection. *Id.* at 47. That reinspection occurred on March 1, 2019, resulting in an allowance for additional repairs. *Id.* at 48–49. In March 2019, CSAA provided a supplemental estimate based on the reinspection. *Id.* at 50–53. In October 2019, the Pintars' contractor agreed to perform the repairs within CSAA's adjusted estimate. *Id.* at 53.

While the date is unknown to the court, at a time thereafter, the Pintars hired Clean Construction to perform the repairs. *Id.* at 88. In November 2019, the Pintars' home suffered additional flooding and water damage while the repairs were on-going because the construction company, who was not covered by insurance at the time, failed to secure a tarp on the roof. *Id.* As a result, the Pintars filed a second insurance claim[7] with CSAA. The current status of the repairs to the Pintars' home is unknown to the court.

## II. Legal standard

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery, and

---

[7] Claim number 1003-56-9234.

disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 319 (1986).

The moving party—the party seeking summary judgment—bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* at 323. If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). However, if the moving party satisfies Federal Rule of Civil Procedure 56's requirements, then the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986). At summary judgment, "a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial." *Assur. Co. of Am. v. Ironshore Specialty Ins. Co.*, 2015 WL 4579983, at *3 (D. Nev. July 29, 2015) (citing *Anderson*, 477 U.S. at 249). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

An issue is "genuine" if there exists a sufficient evidentiary basis upon which a reasonable factfinder could find for the nonmoving party, and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson.*, 477 U.S. at 248. However, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Id.* at 250–51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323–24.

III. Discussion

    *A. Pleadings filed by both parties violated the Local Rules.*

As a threshold matter, the court notes that the pleadings filed by both parties violate Local Rule IA 10-1(b), which requires electronically filed documents to be text searchable. LR IA 10-1(b). Further, CSAA's motion violates Local Rule IC 2-2(3), which requires exhibits and attachments "be attached as separate files[,]" not as part of the base document. LR IC 2-2(3)(A). Indeed, CSAA included a single attachment as a separate file, which included of all of its exhibits instead of filing each exhibit separately. *See* ECF No. 32-1. Given the age of this case and the need for judicial efficiency, the court does not strike the filings under local rule IA 10-1(d). However, the parties are cautioned that future violations of the rules may result in the court striking inappropriately filed documents or exhibits. The court advises the parties that adherence to the rules assists the court in resolving motions more expeditiously.

    *B. CSAA's motion for partial summary judgement is granted in part and denied in part.*

Turning to the motion, CSAA seeks summary judgment on the Pintars' claims for violations of Nevada's Unfair Claim Practices Act, breach of the covenant of good faith and fair dealing, and relief for the Pintars' prayer for punitive damages. *See generally* ECF No. 32.

    1. Summary judgment is denied as moot on the Unfair Claim Practices Act claim, and it is dismissed without prejudice.

The Pintars do not object to dismissing their UCPA claim but argue that it should be dismissed based on lack of subject matter jurisdiction. ECF No. 35 at 8–9. They further argue that despite accepting liability for the damage to the Pintars' residence in both 2018 and 2019, CSAA's refusal to "tender the full policy benefit to reimburse [them] for *all* of their directly related home rebuilding/remodeling costs that arose from those claims" was unreasonable and done in bad faith. *Id.* at 11.

It is unclear why the Pintars brought a UCPA claim because the Nevada Revised Statute gives exclusive jurisdiction[8] to the commissioner of the Nevada Department of Insurance (NDOI) for any claims arising under 686A.310. *See Allstate Ins. Co. v. Thorpe*, 170 P.3d 989, 994 (Nev. 2007). Thus, as conceded by the Pintars (ECF No. 35 at 9), they would first need to exhaust all administrative remedies with the NDOI. *See Nevada Power Co. v. Eighth Jud. Dist. Ct. of Nevada ex rel. Cnty. Of Clark*, 102 P.3d 578, 586 (Nev. 2004); *Yoon v. Travelers Indem. Co.*, 2021 WL 1968279, at *3 (D. Nev. May 17, 2021). There is no evidence before the court that the Pintars exhausted their administrative remedies before bringing their UCPA claim, nor any evidence showing that this claim falls outside the exclusive jurisdiction of the Insurance Commissioner.[9] Accordingly, it is dismissed without prejudice[10] and CSAA's motion for summary judgment on this claim is denied as moot.

> 2. Summary judgment is granted on the breach of the covenant of good faith and fair dealing claim, and the Pintars' prayer for punitive damages.

CSAA is entitled to summary judgment on the breach of the covenant of good faith and fair dealing claim for relief. In Nevada, every contract imposes the duty of good faith and fair dealing, and the relationship of an insured to an insurer is "one of special confidence" akin to, but not ascending to, a fiduciary relationship. *Wohlers v. Bartgis*, 969 P.2d 949, 956 (1998) (internal quotation marks omitted). Thus, "[t]o establish a prima facie case of bad-faith refusal to pay an insurance claim, the plaintiff must establish that the insurer had no reasonable basis for disputing coverage, and that the insurer knew or recklessly disregarded the fact that there was no reasonable basis for disputing coverage." *Powers v. United Servs. Auto. Ass'n*, 962 P.2d 596, 604 (1998); *see also Falline v. GNLV Corp.*, 107 Nev. 1004, 823 P.2d 888 (1991). An insurer fails to act

---

[8] "A court may raise the question of subject matter jurisdiction…at any time during the pendency of an action." *Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).
[9] *See Nev. Power Co.*, 102 P.3d at 586–87 (explaining what the court should consider in determining if a plaintiff's claim falls outside the agency's exclusive jurisdiction).
[10] CSAA asks that I dismiss this claim with prejudice but cites no points and authorities in support of its request. Without more, I decline to dismiss this claim with prejudice.

in good faith when it refuses, without proper cause, to compensate the insured for a loss covered by the policy. *Pemberton v. Farmers Ins. Exch.*, 858 P.2d 380, 382 (Nev. 1993). Such conduct gives rise to a breach of the covenant of good faith and fair dealing and constitutes "bad faith." *Id.* Stated otherwise, when an insurance company's interpretation of the contract is reasonable, there can be no basis for concluding that the insurance company acted in bad faith. *Am. Excess Ins. Co. v. MGM Grand Hotels, Inc.*, P.2d 1352, 1354–55 (1986).

At summary judgment, the party opposing the motion must present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson*, 477 U.S. at 257. The Pintars do not cite any admissible evidence to support their opposition to the motion for partial summary judgment on this claim. Instead, they merely argue that their reliance on their expert's testimony and report proves the CSAA's bad faith conduct and lack of fair dealing. ECF No. 35 at 7–8. However, there is no evidence before the court to support the arguments based on that testimony and report. The court was not provided a copy of the insurance policy detailing coverage, a copy of CSAA's policies showing lack of compliance therewith, or specific information regarding how much CSAA offered to pay versus the estimate, what, if anything, the Pintars actually received in payment(s) from CSAA,[11] or anything else supporting the Pintars' argument. "Conclusory allegations … without factual support, are insufficient to defeat summary judgment." *National Steel Corp. v. Golden Eagle Ins. Co.*, 121 F.3d 496, 502 (9th Cir. 1997). The only admissible evidence addressing the Pintars' argument is the deposition of the Pintars' expert witness, J. Eric Peterson. Jr. J.D., M.B.A., a casualty insurance broker. *See* Peterson Dep., Def.'s Ex. G, ECF No. 32-1 at 99–103. He testified that it was not unreasonable for CSAA to: (1) allow the Pintars to hire their own structural engineer (*id.* at 100), and (2) to find the report produced by

---

[11] CSAA provided some information regarding costs, fees, and estimates in their exhibit. *See* Claim Notes from CSAA, Def.'s Ex. A, ECF No. 32-1 at 29 (fee for engineer); *id.* at 33 (reference to paying a bill in the amount of $960); *id.* at 60 (discussing some repair estimates); *id.* at 41 (discussing repair bids); *id.* at 43 (tree removal cost and additional repair estimates). The only information before the court regarding outstanding bills is set forth in the Pintars' Exhibit 5, the deposition of J. Eric Peterson. Jr. J.D., M.B.A. ECF No. 35-5 at 12 (Peterson testifying he believed CSAA should have covered approximately $142,000 more in repairs).

that engineer inadequate which caused further delay (*id.* at 102). While not directly related to bad faith but nonetheless relevant, he also testified that CSAA did not violate (the now dismissed) NRS 686A.310 (the UPCA). *Id.* at 103. Stated otherwise, Peterson's testimony supports CSAA's motion that their actions were not unreasonable. Further, Peterson testified that CSAA complied with some of the Pintars' request, such as their request to replace kitchen cabinets with real wood, and that CSAA complied with its obligation to put the Pintars up in the hotel during the repairs (even though they elected to stay on the property). *Id.* This is additional evidence that CSAA did not breach the covenant of good faith and fair dealing. ECF No. 35-5 at 15. Without more, I cannot find that the Pintars have met their burden of showing specific facts demonstrating that there is a genuine issue for trial, so I grant CSAA's motion for summary judgment on the Pintars' claim for breach of the covenant of good faith and fair dealing.

      CSAA is also entitled to summary judgment on the Pintars' prayer for punitive damages. In Nevada, a district court "has discretion to determine whether the defendant's conduct merits punitive damages as a matter of law." *Bongiovi v. Sullivan*, 138 P.3d 433, 451 (Nev. 2006). An insurer can be held to pay punitive damages for a bad faith claim if it is shown by clear and convincing evidence that the insurer has been guilty of oppression, fraud, or malice. *Hackler v. State Farm Mut. Auto. Ins. Co.*, 210 F.Supp.3d 1250, 1258 (D. Nev. 2016) (citing NRS § 42.005). Clear and convincing evidence is defined as "evidence establishing every factual element to be highly probable." *In re Discipline of Drakulich*, 908 P.2d 709, 715 (Nev. 1995) (internal quotation marks and citation omitted). The Pintars have failed to show clear and convincing evidence of oppression, fraud, or malice. Rather, the evidence shows a genuine dispute over what should be covered, and the costs related to coverage. As a result, I grant CSAA's motion for summary judgment on the Pintars' prayer for punitive damages.

IV. Conclusion

IT IS THEREFORE ORDERED that CSAA's motion for partial summary judgment [ECF No. 32] is GRANTED in part and DENIED as moot in part.

IT IS FURTHER ORDERED that the parties participate in a mandatory settlement conference before the magistrate judge assigned to this case. Should the case fail to settle, **a joint pretrial order will be due 14 days after the settlement conference.**

The Clerk of Court is kindly directed to correct the caption to reflect the defendant as CSAA General Insurance Company.

DATED: October 16, 2023

_____
Cristina D. Silva
United States District Judge